UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED FINANCIAL CASUALTY COMPANY,<br><br>   Plaintiff,<br>v.<br><br>RAPID AGE GROUP LLC et al.,<br><br>   Defendant. | CASE NO. 3:23-cv-06068-DGE<br><br>ORDER ON MOTION FOR DEFAULT JUDGMENT AGAINST RAPID AGE GROUP, LLC, IRINA PAPIRNIK, AND VITALIY PAPIRNIK (DKT. NO. 25) |

## I  INTRODUCTION

This matter comes before the Court on Plaintiff United Financial Casualty Company ("UFCC")'s Motion for Default Judgment against Defendants Rapid Age Group, LLC ("Rapid Age") and Irina and Vitaliy Papirnik.  (Dkt. No. 25.)

## II  BACKGROUND

This lawsuit arises from a car accident on July 16, 2023 in Tacoma, Washington.  (Dkt. No. 1 at 3.)  According to the complaint, Defendant Vitaliy Papirnik was negligently driving a 2021 BMW X7, causing an accident resulting in bodily injury and death to multiple persons (the "Claimants").  (*Id.*)  UFCC insured Rapid Age under a commercial auto policy.  (*Id.* at 4.)  Vitaliy Papirnik is listed as a rated driver under the commercial policy, but the 2021 BMW X7 was not listed under the policy.  (*Id.*)  The Claimants, by themselves or through their estates, seek damages from Rapid Age and the Papirnik Defendants for alleged negligence.  (*Id.* at 3–4.)

UFCC is currently defending Rapid Age and the Papirniks under an express reservation of rights. (*Id.* at 4.)

UFCC filed this declaratory judgment action against Rapid Age, the Papirniks, and the Claimants requesting a declaration that UFCC owes no defense or indemnity obligation to the Papirnik Defendants or Rapid Age for any claims asserted against them arising out of the accident. (Dkt. No. 1 at 20.) Neither Rapid Age nor the Papirniks have appeared or defended the action. UFCC therefore requests default judgment against them.

### III   DISCUSSION

#### A.   Legal Standard

Federal Rule of Civil Procedure 55(b) permits the Court to enter a default judgment against a party after the Clerk of Court has entered the party's default. Fed. R. Civ. P. 55(b). "[T]he general rule [upon default] is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Allegations related to damages, however, must be supported with evidence. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–918 (9th Cir. 1987); *see also* Fed. R. Civ. P. 55(b)(2)(B). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, the Court considers the following factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–1472 (9th Cir. 1986).

#### B.   Jurisdiction

1    As a preliminary step, the Court must determine whether it has both subject matter and
2 personal jurisdiction over the parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When
3 entry of judgment is sought against a party who has failed to plead or otherwise defend, a district
4 court has an affirmative duty to look into its jurisdiction over both the subject matter and the
5 parties.")

6    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there is
7 complete diversity between the parties and the amount in controversy is over $75,000.  The
8 Court may also assert personal jurisdiction over the Defendants as they are domiciled in
9 Washington.  (*See* Dkt. Nos. 1 at 2; 5 at 1; 7 at 1; 8 at 1); *see also* Fed. R. Civ. P. 4(k)(1)(A);
10 Wash. Rev. Code § 4.28.080.

11   Finally, service of process was proper.  A plaintiff may properly serve a defendant
12 "following state law for serving a summons in an action brought in courts of general jurisdiction
13 in the state where the district court is located[.]"  Fed. R. Civ. P. 4(e)(1).  Washington Civil Rule
14 4 establishes personal service shall be made as outlined in the Washington Revised Code.  Wash.
15 Civ. R. 4(d).  In Washington, if service is made against "a company or corporation[,]" proper
16 service is made "to the president or other head of the company or corporation, [or] the registered
17 agent . . . ."  Wash. Rev. Code 4.28.080(9).

18   On November 30, 2023, UFCC served Selective Dynamix Inc., registered agent
19 designated by law to accept service on behalf of Rapid Age.  (Dkt. No. 5.)  The server delivered
20 the documents to "[L]ogiserv [A]lex [B]ennett who identified themselves as the person
21 authorized to accept with identity confirmed by subject stating their name."  (*Id.*)  On December
22 7, 2023, UFCC served Vitaliy Papirnik by leaving the summons at his residence with Irina, who
23 identified herself as his spouse and co-resident.  (Dkt. No. 7.)  Irina was personally served in that
24

ORDER ON MOTION FOR DEFAULT JUDGMENT AGAINST RAPID AGE GROUP, LLC, IRINA PAPIRNIK, AND VITALIY PAPIRNIK (DKT. NO. 25) - 3

same interaction. (Dkt. No. 8.)  Service of all three parties meets the standard under Washington law and Rule 4(3)(1).

**C.   *Eitel* Factors**

The Court now turns to the *Eitel* factors to determine whether default judgment is appropriate in this instance.

1. <u>Possibility of prejudice to Plaintiff</u>

If Plaintiff's motion for default judgment is not granted, UFCC will likely be without other recourse and may be forced to continue to defend and indemnify Rapid Age.  Such potential prejudice to Plaintiff weighs in favor of granting a default judgment.  *See GEICO Indem. Co. v. M.M.*, No. CV-23-00187-TUC-JCH, 2023 WL 4595993, at *2 (D. Ariz. July 18, 2023).

2. <u>Merits of Plaintiff's substantive claim as alleged in complaint</u>

The second and third *Eitel* factors are generally considered together.  *See Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014).  These factors focus on the merits of the substantive claims and the sufficiency of the complaint.  *Eitel*, 782 F.2d at 1471–1472.  "Together, [they] require that Plaintiff assert claims upon which it may recover." *IO Grp. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010) (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003)).

UFCC seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.  (Dkt. Nos. 24 at 5; 1 at 1.)  The Act provides that in a case of actual controversy within its jurisdiction, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

Taking the well-pleaded facts in the complaint as true, UFCC issued a commercial automobile policy to Rapid Age effective September 13, 2022 to September 13, 2023.[1]  (Dkt. No. 1 at 4.)  The commercial policy covers certain drivers, including Vitaliy Papirnik, when those drivers are driving "insured autos."  (*Id.*)  "Insured autos" includes four types of autos: "any auto specifically described on the declarations page"; as well as an "additional auto"; a "replacement auto"; or a "temporary substitute auto."  (Dkt. No. 1 at 14–16.)

An "additional auto" means:

(i) you acquire the auto during the policy period shown on the declarations page;
(ii) we insure the auto during the policy period shown on the declarations page;
(iii) no other insurance policy provides coverage for that auto; and
(iv) you tell us within 30 days after you acquire it that you want us to cover it[.]

(*Id.* at 14–15.)

A "replacement auto" is covered as an insured auto if:

(i) you acquire the auto during the policy period shown on the declarations page;
(ii) the auto that you acquire replaces one specifically described on the declarations page due to termination of your ownership of the replaced auto or due to mechanical breakdown of, deterioration of, or loss to the replaced auto that renders it permanently inoperable;
(iii) no other insurance policy provides coverage for that auto; and
(v) you tell us within 30 days after you acquire it that you want us to cover it[.]

(*Id.* at 15.)

A "temporary substitute auto" means:

any auto you do not own while used with the permission of its owner as a temporary substitute for an insured auto that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, temporary substitute auto does not include any auto available for the regular or frequent use of you, a relative, or your employees unless that auto is insured under a separate policy of

---

[1] UFCC also issued a personal automobile policy to the Papirniks effective May 5, 2023 to November 5, 2023.  (*Id.* at 17.)  UFCC tendered the full limit of liability under the Personal Policy with respect to the subject loss.  (*Id.*)

ORDER ON MOTION FOR DEFAULT JUDGMENT AGAINST RAPID AGE GROUP, LLC, IRINA PAPIRNIK, AND VITALIY PAPIRNIK (DKT. NO. 25) - 5

insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

(*Id.* at 16.)

The BMW is not listed as an insured auto. (*Id.* at 4.) According to the declaration from claims specialist Charlotte Pesola-Gozalez, Rapid Age may have acquired the BMW in 2022, but never requested coverage for it under the policy. (Dkt. No. 26 at 3.) In its motion, UFCC states Rapid Age was not the owner of the BMW at the time of the loss, and that it was not being used as a temporary substitute for any vehicle under that definition because Papirnik was using the vehicle to drive his wife to church. (Dkt. No. 25 at 2, 8.)

But these factual assertions are nowhere to be found in the complaint. Instead, the complaint merely states, "[a]n actual and justiciable controversy exists as to whether subject loss involves an 'insured auto' such that Rapid Age is an 'insured' under the Commercial Policy's Commercial Auto coverage part" and "[a]n actual and justiciable controversy exists as to whether the Papirnik Defendants qualify as insureds under the Commercial Policy's Commercial Auto coverage part." (Dkt. No. 1 at 17.) The complaint fails to identify who owned the BMW, for what purpose the BMW was being driven, whether it was acquired during the policy period, whether the BMW was available for frequent use by Rapid Age or the Papirniks, whether the BMW was independently insured, whether that insurance met the minimum state requirements, or any other fact material to determining whether the accident at issue would be covered by the commercial policy. UFCC has therefore not sufficiently pled a meritorious case in its complaint. This factor weighs heavily against default judgment.

   3. <u>Sum of money at stake in the action</u>

Where the underlying claim is for declaratory relief, some courts have found that this factor weighs favorably for granting default judgment. *See PepsiCo, Inc. v. California Sec.*

, 238 F. Supp. 2d 1172, 1177–1178 (C.D. Cal. 2002). If the declaratory relief sought implicates the parties and merits of a separate action, however, courts have considered the amount at stake in that separate action while weighing the *Eitel* factors. *See Helwan Cement S.A.E. v. Tahaya Misr Inv., Inc.*, No. 2:17-cv-00543-CAS (AFMx), 2017 WL 2468775, at *5 (C.D. Cal. June 5, 2017) (citing *Lexington Ins. Co. v. Lennar Sales Corp.*, Case No. 11–cv–03411, 2012 WL 12883900, at *10 (C.D. Cal. Mar. 7, 2012) (concluding that this factor weighs against default judgment where an insurance company sought a declaration that it had no duty to defend separate actions for, cumulatively, $925 million)).

The Commercial Auto policy includes a $1M combined single limit of liability for bodily injury and property damage for liability to others. (*Id.* at 3.) Under the commercial general liability coverage part, the UFCC Policy includes a $1M each occurrence and $2M general aggregate limit of liability for trucking operations. (*Id.*) The Personal Policy includes $100,000 each person/$300,000 each accident bodily injury limit of liability and a $50,000 each accident property damage limit of liability. (Dkt. No. 1 at 17.) It does not appear, however, that there is any pending litigation by the claimants against Rapid Age or the Papirniks. No such litigation or claim is identified in Plaintiff's complaint, and UFCC stated the same in its reservation of rights letter. (Dkt. No. 26-2 at 2) ("UFCC understands that at this time, no suit related to the subject loss has been filed against Rapid Age.") Thus, the sum at issue could be several millions of dollars; at the same time, it could be zero. The Court thus finds this factor does not weigh for or against default.

       4. <u>Possibility of a dispute concerning material facts</u>

"Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is only a remote possibility that any genuine issue of material fact

ORDER ON MOTION FOR DEFAULT JUDGMENT AGAINST RAPID AGE GROUP, LLC, IRINA PAPIRNIK, AND VITALIY PAPIRNIK (DKT. NO. 25) - 7

exists." *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) *accord Philip Morris*, 219 F.R.D at 500; *PepsiCo*, 238 F. Supp. 2d at 1177. Usually, cases in which insurers seek declaratory judgment to determine the duty to defend or indemnify do not depend on resolving disputed facts. *See GEICO*, 2023 WL 4595993, at *2. Here, however, the lack of well-pleaded facts creates a possibility of dispute regarding material facts. This factor weighs against default judgment.

### 5. Default due to excusable neglect

The Court finds that there is no evidence of excusable neglect. Plaintiff served Defendants with the summons and Complaint. (Dkt. Nos. 5, 7, 8.) Despite ample notice of this lawsuit, Defendants have failed to appear in this action. Thus, the record supports a conclusion that Defendants have chosen not to defend this action, and not that the default resulted from excusable neglect. Accordingly, this *Eitel* factor favors the entry of a default judgment.

### 6. Strong policy favoring decision on the merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the mere existence of Federal Rule Civil Procedure 55(b) indicates that "this preference, standing alone, is not dispositive." *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996). While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits. As Rule 55 indicates, one such instance is when a party fails to defend against an action, which is exactly what defendants failed to do in this case. Defendant was given an opportunity to have this dispute decided on the merits but did not respond to the Complaint. Defendant's failure to respond makes a decision on the merits impractical. However, the factual insufficiency in the complaint gives more credence to the strong policy favoring decisions on the

merits because any default judgment would be based on facts not plead.  This factor weighs against default judgment.

\* \* \*

On balance, the *Eitel* factors do not support an order of default judgment.  While the default does not appear to result from excusable neglect, the merits of UFCC's claim as plead are ambiguous based on the factual insufficiency of the complaint.  Given the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits, default judgment is not appropriate in this instance.  Plaintiff may be prejudiced with no other form of recourse against the non-appearing Defendants; thus, to remedy that prejudice, Plaintiff is permitted to amend the complaint.

## IV    CONCLUSION

Accordingly, and having considered United Financial Casualty Company's motion and the remainder of the record, the Court finds and ORDERS that the Motion for Default Judgment against Rapid Age and Vitaliy and Irina Papirnik (Dkt. No. 25) be **DENIED.**   Should Plaintiff so choose, it may file an amended complaint curing any deficiencies identified in this Order no later than June 22nd, 2024.

DATED this 22nd day of May 2024.

David G. Estudillo
United States District Judge